UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| STEPHANIE HAYNES | ) |
| Plaintiff, | ) |
| v. | ) |
| AMAZON.COM SERVICES, LLC | ) |
| Defendant. | ) |

# COMPLAINT AND JURY DEMAND

## PARTIES

1. The Plaintiff, Stephanie Haynes ("Ms. Haynes" or the "Plaintiff"), is a female resident of the state of Connecticut, residing at 1430 Dixwell Avenue, 2nd Floor, Hampden, Connecticut, 06514. Hampden is in Hartford County.

2. Defendant Amazon.com Services, LLC (the "Company" or the "Defendant") is a foreign for-profit corporation doing business in the state of Connecticut. The Company is incorporated in Delaware and its principal office is located at 410 Terry Avenue North, Seattle, Washington 98109-5210.

## JURISDICTION AND VENUE

3. This court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. §1331 because Plaintiff has brought a claim pursuant to Title VII, 42 U.S.C. §§ 2000e, et seq. The court may exercise supplemental jurisdiction over the Plaintiff's state law claims. 28 U.S.C. §1367.

4. This court has personal jurisdiction over the Defendant because the Defendant has engaged in and transacted business in the State of Connecticut, including by managing and/or operating a business in Connecticut and/or employing the Plaintiff in Connecticut, and Plaintiff's causes of action stem largely from Defendant's business transactions within the State of Connecticut. Indeed, the Plaintiff was employed by the Defendant in the State of Connecticut, was managed and supervised by Defendant in the State of Connecticut, was discriminated against and harassed by the Defendant in the State of Connecticut and was terminated by the Defendant in the State of Connecticut.

## STATEMENT OF FACTS

5. On or around October 2, 2019, Ms. Haynes was hired as a member of the Inventory Control/Quality Assurance Department for the Company in its North Haven, CT facility.

6. At all relevant times (including throughout Ms. Haynes's employment), the Company employed 15 or more employees during the 20 or more weeks within the current or preceding calendar year.

7. Indeed, at all relevant times (including throughout Ms. Haynes's employment), the Company employed 501 or more employees during the 20 or more weeks within the current or preceding calendar years.

8. At all relevant times, Ms. Haynes was a qualified employee and her job performance was satisfactory.

9. On or around October 22, 2019, about three weeks after Ms. Haynes started working for the Company, John Muir ("Muir"), one of Ms. Haynes's male co-workers, began to comment in a sexual manner about the way Ms. Haynes looked.

10. Shocked by these sexually charged comments, Ms. Haynes made it clear to Muir these comments were unwelcome, unwanted, and needed to stop.

11. Despite the fact that Ms. Haynes made it clear that these comments were unwelcome, unwanted, and needed to stop, Muir continued making similar, sexually suggestive comments to Ms. Haynes.

12. In addition to making sexually suggestive comments, Muir would approach Ms. Haynes and leer at her in a sexually charged manner at her workstation and throughout the Company's facility during the work day.

13. For example, on or around November 19, 2019, Muir cornered Ms. Haynes in a hallway at the Company's facility.

14. Muir proceeded to get extremely close to Ms. Haynes, blocking her means of escape, and stated, "I can't wait until I have sex with you," and "I miss the wetness."

15. While threateningly cornering Ms. Haynes, Muir also asked if she would have sex with him without a condom so he could "feel everything."

16. Alarmed by Muir's threatening behavior and continued sexually harassing comments (despite Ms. Haynes repeatedly conveying these comments were unwelcome, unwanted, and needed to stop), Ms. Haynes reasonably feared Muir would escalate his sexually harassing behavior and sexually assault her.

17. Fearing this potential sexual assault, Ms. Haynes pushed past Muir and ran away.

18. Despite Ms. Haynes again making it very clear to Muir this behavior was unwelcome, unwanted, and needed to stop, Muir attempted to follow Ms. Haynes throughout the Company's facility.

19. Later in the day, Ms. Haynes's manager and Company ambassador Jessica Spivak ("Spivak") asked Ms. Haynes what was going on with her (Ms. Haynes).

20. In response, Ms. Haynes raised protected concerns to Spivak about Muir's sexual harassment and threatening behavior.

21. Spivak offered to help set up a meeting with Human Resources and Ms. Haynes to discuss the matter.

22. On or around November 20, 2019, the next day, Ms. Haynes met with Spivak, Area Manager Jesse Haggerty ("Haggerty") and Human Resources Assistant Ting Li ("Li").

23. During this meeting, Ms. Haynes reiterated her protected concerns regarding Muir's sexually harassing behavior to Li, Haggerty, and Spivak.

24. Indeed, Ms. Haynes noted Muir had repeatedly sexually harassed her (Ms. Haynes) and, in light of Muir's escalating sexual harassment and refusal to take no for an answer, further that she was concerned that he (Muir) would sexually assault her (Ms. Haynes).

25. Li told Ms. Haynes that she (Ms. Haynes) needed to write a formal written complaint before any investigation would be started and noted that this formal complaint needed to be completed before any actions would be taken to protect Ms. Haynes.

26. As requested, Ms. Haynes wrote out the complaint in front of Li and provided it to her that day.

27. After being presented with the formal written complaint, Li stated that an investigation would be started into this matter and that she would keep Ms. Haynes updated.

28. On or around November 21, 2019, Li informed Ms. Haynes they would be speaking with Muir regarding the complaint by Ms. Haynes about his sexually harassing behavior. Li further noted that Muir would be transferred to a different department.

29. Despite Li's promise that Muir would be transferred to another department, on or around November 22, 2019, Muir was still working in Ms. Haynes's department.

30. Alarmed by the fact that Muir was still working in the same department and, according to Li, had been spoken to regarding her complaint against him related to his sexually harassing behavior, Ms. Haynes became increasingly scared Muir would escalate his sexually harassing behavior and/or subject her (Ms. Haynes) to retaliation for reporting his harassment.

31. This caused Ms. Haynes to experience extreme mental and emotional strain.

32. Since the Company seemed unwilling to send Muir home, Ms. Haynes asked Haggerty and Spivak to be allowed to take a week off so she could see a therapist about the anxiety and torment created by Muir's sexual harassment.

33. Spivak and Haggerty approved this request.

34. On or around December 1, 2019, Ms. Haynes returned to work to see that Muir was still employed by the Company and was sitting at his normal workstation, still working in the same department as Ms. Haynes. Because Muir still had not been transferred, in order to perform her normal job duties, Ms. Haynes would need to come in relative close proximity to him (Muir), and thus was in danger of being further harassed or threated by him.

35. Shocked by Muir continuing to work not only the same shifts as Ms. Haynes, but in the same department (contrary to Li's prior promise to transfer him), Ms. Haynes again raised protected concerns to Spivak and Haggerty.

36. Indeed, Ms. Haynes asked why Muir was still employed by the Company and actively working in the facility when he had sexually harassed her (Ms. Haynes) in such a horrible and egregious manner.

37. In response, Haggerty claimed the investigation into the sexual harassment was ongoing and that he would not do anything until the investigation concluded.

38. Ms. Haynes raised further protected concerns to Spivak and Haggerty that she feared Muir would sexually assault her or continue to subject her to sexually harassing comments in retaliation for the ongoing investigation.

39. Despite the serious nature of Ms. Haynes's concerns, Spivak and Haggerty ignored Ms. Haynes's concerns and told her to go back to work.

40. Although Ms. Haynes feared Muir would continue to subject her to sexually harassing behavior and comments, Ms. Haynes complied with Haggerty and Spivak's orders and went back to her workstation.

41. Almost as soon as Ms. Haynes arrived at her station, Muir began to leer at her in a sexual manner.

42. Alarmed by the continued sexual harassment she was being subjected to and the seemingly blasé attitude being taken by the Company, Ms. Haynes again raised protected concerns to Li that Muir was continuing to sexually harass her.

43. In addition, Ms. Haynes asked why Muir was being allowed to stay at the Company, in Ms. Haynes's department, and working the same shifts as Ms. Haynes, despite his previous sexual harassment.

44. Li ignored Ms. Haynes's concerns and stated she would not do anything further until the investigation into Muir was completed.

45. On or around December 14, 2019, Li called Ms. Haynes into her office.

46. During this meeting, Li told Ms. Haynes the Company had closed its investigation into Muir and that Ms. Haynes would be moved into a different department.

47. Notably, Ms. Haynes had not asked to be moved into a different department and did not want to be transferred into a different department. Indeed, it seemed retaliatory that the Company was forcing Ms. Haynes, not her harasser, to move to a different department.

48. When Ms. Haynes asked Li if Muir was still employed by the Company and if he was going to be disciplined for his actions, Li refused to provide any additional information.

49. Indeed, even when Ms. Hayes asked if the Company would do anything else to stop the harassment or make Ms. Haynes feel safe, Li refused to provide any further information.

50. When Ms. Haynes left Li's office to collect her belongings and to move to a different department, Ms. Haynes saw that Muir was now sitting at a workstation in the same new department that Ms. Haynes was being assigned to move to. Thus, even while it retaliated against her by imposing an involuntary transfer, the Company had not even separated Muir from Ms. Haynes or otherwise taken action to ensure that Muir did not regularly come into contact with Ms. Haynes at work.

51. Realizing that she (Ms. Haynes) would still be working in the same department as Muir and still be subject to his harassment, Ms. Haynes raised protected concerns again to Spivak and Haggerty, including asking why Muir was being allowed to remain at the Company and was being transferred to the same department that Ms. Haynes was transferred to.

52. Indeed, it seemed as though the Company was punishing Ms. Haynes for reporting the sexually harassing behavior of Muir.

53. Spivak and Haggerty again ignored Ms. Haynes's protected concerns.

54. When Ms. Haynes returned to work from the weekend on or around December 17, 2019, she (Ms. Haynes) suddenly and unexpectedly received an email from Human Resources stating she was terminated.

55. Alarmed by this clearly retaliatory termination, Ms. Haynes went and talked to Li.

56. During this meeting, Ms. Haynes raised protected concerns as to why she was being unexpectedly terminated, but Muir, who had sexually harassed her (Ms. Haynes), was still employed by the Company.

57. Shockingly, Li dismissed these concerns, repeated that Ms. Haynes was terminated, and stated that the Company was not going to take any further actions against Muir.

58. Therefore, Ms. Haynes was involuntarily terminated from the Company on or around December 17, 2019.

59. Upon information and belief, Muir continues to be employed by the Company.

60. Upon information and belief, Ms. Haynes was replaced by a male employee.

61. On or around June 2, 2020, Ms. Haynes timely filed a Charge of Discrimination (the "Charge") with the Connecticut Commission on Human Rights and Opportunities ("CHRO") (No. 2030581) and the United States Equal Employment Opportunity Commission (Charge No. 16A202000863).

62. Ms. Haynes notified the CHRO of her intent to file a complaint in court and, accordingly, requested that the CHRO release jurisdiction and permit Ms. Haynes to file in court.

63. On or around February 19, 2021 the CHRO released its jurisdiction.

64. On or around February 25, 2021, the EEOC issued a Right to Sue letter.

65. This Complaint is timely filed in compliance with the timeframes of relevant laws and requirements.

## COUNT I

**(Sexual Harassment and Sex Discrimination in Violation of Title VII – 42 U.S.C. § 2000e-2)**

**Plaintiff v. Defendant**

66. Plaintiff incorporates all paragraphs above and below as if set forth fully herein.

67. The Company is an employer under the definition of 42 U.S.C. § 2000e (42 U.S.C. §§ 2000e et seq., hereinafter, "Title VII").

68. The Company, by and through its agents, including Muir, Haggerty, and Li, sexually harassed and discriminated against the Plaintiff with respect to her compensation, terms, conditions, or privileges of employment, because of Plaintiff's sex.

69. Additionally, the Company subjected the Plaintiff to adverse actions, including, but not limited to, a hostile and sexually harassing workplace, an involuntary transfer to a less desirable position and department, and the termination of Ms. Haynes's employment because she was a woman and/or a woman who refused to accept, engage in, or reciprocate sexually harassing behavior and/or refused to accept a sexually harassing and hostile work environment.

70. The Company acted with malice and/or reckless indifference to the federally protected rights of the Plaintiff.

71. As a direct and proximate result of the Company's violations of Title VII, the Plaintiff has suffered and continues to suffer damages, including, but not limited to, lost compensation and benefits, interest on lost compensation and benefits, loss of earning capacity, pain and suffering, loss of enjoyment of life, and emotional damages.

72. The Plaintiff seeks all damages to which she is entitled, including, but not limited to, lost compensation and benefits (including, but not limited to, back pay and front pay),

damages for diminished earning capacity and injury to reputation, other monetary damages, emotional distress damages, additional compensatory damages (including, but not limited to, future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses), punitive damages, attorneys' fees, interest, and costs.

## COUNT II

**(Sexual Harassment and Sex Discrimination in Violation of Conn. Gen. Stat. § 46a-60)**

**Plaintiff v. Defendant**

73. Plaintiff incorporates all paragraphs above and below as if set forth fully herein.

74. The Company is an employer under the definition of the Connecticut Fair Employment Practices Act, Conn. Gen. Stat. § 46a-60 ("CTFEPA").

75. The Company, by and through its agents, including Muir, Haggerty, and Li, sexually harassed and discriminated against the Plaintiff with respect to her compensation, terms, conditions, or privileges of employment, because of Plaintiff's sex.

76. Additionally, the Company subjected the Plaintiff to adverse actions, including, but not limited to, a hostile and sexually harassing workplace, an involuntary transfer to a less desirable position and department, and the termination of Ms. Haynes's employment because she was a woman and/or a woman who refused to accept, engage in, or reciprocate sexually harassing behavior and/or refused to accept a sexually harassing and hostile work environment.

77. The Company's actions against Ms. Haynes were willful and malicious.

78. As a direct and proximate result of the Company's violations of the CTFEPA, the Plaintiff has suffered and continues to suffer damages, including, but not limited to, lost

compensation and benefits, interest on lost compensation and benefits, loss of earning capacity, pain and suffering, loss of enjoyment of life, and emotional damages.

79. The Plaintiff seeks all damages to which she is entitled, including, but not limited to, lost compensation and benefits (including, but not limited to, back pay and front pay), damages for diminished earning capacity and injury to reputation, other monetary damages, emotional distress damages, additional compensatory damages (including, but not limited to, future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses), punitive damages, attorneys' fees, interest, and costs.

## COUNT III

### (Retaliation in Violation of 42 U.S.C. §§ 2000e et seq.)

### Plaintiff v. Defendant

80. Plaintiff incorporates all paragraphs above and below as if set forth fully herein.

81. The Plaintiff opposed a practice made unlawful by Title VII, including by participating in an investigation into sexual harassment allegations, opposing unlawful conduct, and expressing protected concerns regarding the sexually harassing and discriminatory actions of the Company and its employees, including, but not limited to, by requesting Muir cease the sexually harassing and discriminatory behavior and by requesting the Company address Muir's sexually harassing and discriminatory behavior.

82. The Company discriminated against and/or retaliated against the Plaintiff for opposing one or more practices made unlawful by Title VII, including, but not limited to, by subjecting Ms. Haynes to sexual harassment and/or a hostile work environment and/or by terminating Ms. Haynes's employment with the Company for pretextual reasons.

83. The Company acted with malice and/or reckless indifference to the federally protected rights of the Plaintiff.

84. As a direct and proximate result of the Company's violations of Title VII, the Plaintiff has suffered and continue to suffer damages, including, but not limited to, lost compensation and benefits, reduced earning capacity, pain and suffering, loss of enjoyment of life, and emotional damages.

85. The Plaintiff seeks all damages to which she is entitled, including, but not limited to, lost compensation and benefits (including, but not limited to, back pay and front pay), damages for diminished earning capacity and injury to reputation, other monetary damages, emotional distress damages, additional compensatory damages (including, but not limited to, future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses), punitive damages, attorneys' fees, interest, and costs.

## COUNT IV

**(Retaliation in Violation of Conn. Gen. Stat. § 46a-60)**

**Plaintiff v. Defendant**

86. Plaintiff incorporates all paragraphs above and below as if set forth fully herein.

87. The Plaintiff opposed a practice made unlawful by the CTFEPA, including by participating in an investigation into sexual harassment allegations, opposing unlawful conduct, and voicing protected concerns regarding the sexually harassing and discriminatory actions of the Company and its employees, including, but not limited to, by requesting Muir cease the sexually harassing and discriminatory behavior and by requesting the Company address Muir's sexually harassing and discriminatory behavior.

88. The Company discriminated against and/or retaliated against the Plaintiff for opposing one or more practices made unlawful by the CTFEPA, including, but not limited to, by subjecting Ms. Haynes to sexual harassment and/or a hostile work environment and/or by terminating Ms. Haynes's employment with the Company for pretextual reasons.

89. The Company's actions against Ms. Haynes were willful and malicious.

90. As a direct and proximate result of the Company's violations of Title VII, the Plaintiff has suffered and continue to suffer damages, including, but not limited to, lost compensation and benefits, reduced earning capacity, pain and suffering, loss of enjoyment of life, and emotional damages.

91. The Plaintiff seeks all damages to which she is entitled, including, but not limited to, lost compensation and benefits (including, but not limited to, back pay and front pay), damages for diminished earning capacity and injury to reputation, other monetary damages, emotional distress damages, additional compensatory damages (including, but not limited to, future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses), punitive damages, attorneys' fees, interest, and costs.

WHEREFORE, the Plaintiff, Stephanie Haynes, respectfully requests that this honorable court:

A. Schedule this matter for trial by jury;

B. Find the Defendant liable on all counts;

C. Award the Plaintiff her lost compensation and benefits (including, but not limited to, back pay and front pay),

D.  Award the Plaintiff other monetary damages, including damages for her diminished earning capacity and injury to reputation;

E.  Award the Plaintiff emotional distress damages and compensatory damages, including, but not limited to, future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses;

F.  Award the Plaintiff punitive damages;

G.  Award the Plaintiff her reasonable attorneys' fees;

H.  Award the Plaintiff interest and costs;

I.  Award the Plaintiff all other damages to which she is entitled; and

J.  Grant such further relief as is just and equitable.

Respectfully Submitted,

STEPHANIE HAYNES

By her attorneys,

THE LAW OFFICES OF WYATT & ASSOCIATES P.L.L.C

Date:   March 15, 2021                    By:   /s/ Michael R. Varraso

Michael R. Varraso
mvarraso@wyattlegalservices.com
CT State Bar: 439521
D. Conn. No.: ct307777

Benjamin J. Wyatt
BWyatt@Wyattlegalservices.com
CT State Bar: 437487
D. Conn. No.: ct29994


The Law Offices of Wyatt & Associates, P.L.L.C.
17 Elm Street, Suite C211
Keene, NH 03431
Telephone: (603) 357-1112
Facsimile: (603) 685-2868